UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 14-cr-40023-TSH |
| | ) | |
| JONATHAN TUFTS-RAYMOND, | ) | |
| Defendant. | ) | |

## GOVERNMENT'S MEMORANDUM OF LAW AS TO THE APPLICATION OF THE SENTENCING GUIDELINES

The United States of America, by Carmen M. Ortiz, U.S. Attorney, and Mark J. Grady,

Assistant U.S. Attorney, submits this memorandum to briefly address the dispute of the parties

concerning the appropriate application of the Sentencing Guidelines.

In short, the defendant contends that the firearm was merely displayed, or "brandished,"

whereas the government contends that the weapon was "used" to threaten specific individuals,

and, accordingly, the defendant's conduct warrants a higher offense level.   *See* USSG

§2B3.1(b)(2)(B) and (C).

### A.  Facts

In the five week period between October 30th and November 25th of last year, Jonathan

Tufts Raymond ("Tufts-Raymond") and a co-defendant,[1] committed a total of eight armed

robberies involving a jewelry store, two banks, and five grocery stores.[2]   This crime spree

---

[1] Tufts-Raymond's co-defendant, Krystian Gubernat ("Gubernat"), is currently charged by federal complaint.   *See* 14-mj-4021-DHH.   It is anticipated that charges against Gubernat will be similarly resolved, *i.e.*, by a plea to an Information.

[2] The facts underlying each robbery are sufficiently set forth in the Pre-Sentence Report and will not be repeated herein. To the extent that specific facts are relevant to the legal issues raised, those facts are expanded upon in the course of the legal discussion below.

culminated in a "massive" manhunt in downtown Spencer on the morning of November 26th, involving a police helicopter, K-9 units, and dozens of officers from the State and local police. The manhunt in question was no small matter, shutting down the downtown area of Spencer for several hours.   While its scope cannot be fully conveyed to the Court, portions of the effort to capture Tufts-Raymond and his co-defendant were documented by the Worcester Telegram & Gazette and the resulting article and accompanying photographs are attached hereto as **Exhibit 1**.[3]

A loaded firearm, whose appearance is consistent with that of the firearm used in the robberies, was recovered from the area of Tufts Raymond's arrest.   (**Exhibit 2**)

### B.  The Plea Agreement

The present matter comes before the Court pursuant to a plea agreement entered into pursuant to Fed. R. Crim. P. 11(c)(1)(B).   Briefly, though a copy is docketed with the Court [D. 21], the government is advocating for a sentence of 180 months, while the defendant is arguing for a sentence of eight years (96 months).   Pursuant to the agreement, the defendant has waived his right to appeal and/or collaterally attack a sentence within the range contemplated by the agreement and the government has agreed, *inter alia*, to forego additional charges under 18 U.S.C. §924(c) in connection with seven of the armed robberies.[4]

---

[3]  The article itself is available at http://www.telegram.com/article/20131127/NEWS/311279833/0 (last visited December 9, 2014).

[4]  Digressing briefly, the government would take this opportunity to highlight for the Court both the significance and implications of its concession with respect to additional Section 924(c) charges.   In short, by pleading guilty to the charges pursuant to this agreement, Tufts-Raymond has avoided the possibility that he would face a *mandatory minimum sentence* of one hundred and eighty two years.   To explain, where a weapon has been "brandished" during the course of a violent felony, the "first offense" under Section 924(c) is punishable by a seven year mandatory minimum sentence.   Any "subsequent offense" would punishable by a twenty five year mandatory minimum sentence.   *See* 18 U.S.C. §924(c)(1)(A) and (C).   Somewhat uniquely, Congress has provided that any 924(c) charge beyond the first must be considered a "second or

## Argument

I.    **The PSR Has Appropriately Calculated the Defendant's Guideline Sentencing Range**[5]

Unsurprisingly, the Sentencing Commission has determined that the use of a firearm during the course of a robbery warrants enhancement of a defendant's GSR.   Indeed, the Commission has provided that differing enhancements ought to be applied depending upon how the firearm is used during the crime.   As relevant here, the applicable guideline provision provides that a six level upward adjustment should be applied when a firearm is "otherwise used" during the course of an armed robbery, whereas a five level upward adjustment is applied when a firearm is merely "brandished."   *See* USSG §2B3.1(b)(2)(B) and (C).   As to Counts I, II, IV, V, and VIII of the Information, the parties differ as to the application of the firearm enhancement.

The First Circuit has held that a six level adjustment for "otherwise using" a firearm, rather

---

subsequent" offense, even if those charges are contained within the same charging instrument. *See Deal v. United States*, 508 U.S. 129, 132 (1993).   *See also, e.g., United States v. Major*, 676 F.3d 803, 812 (9th Cir. 2012) ("When a defendant is charged and found guilty of multiple violations of section 924(c) in the same indictment, one of the convictions is treated as the first conviction, and the others are treated as 'second or subsequent' convictions.").   Here, the first 924(c) charge carries a seven year mandatory minimum, and, each additional charge (up to seven such charges) would have carried a twenty five year mandatory minimum.   What's more, all of these sentences would have to be imposed consecutively to each other, *i.e.* 7+(25*7) = 182.   *See* 18 U.S.C. §924(c)(1)(C)(ii).   Admittedly, the possibility of such a sentence is of lesser significance in light of the government's agreement to seek a sentence of fifteen years in this matter.   Nevertheless, the government believes that the Court should be aware of the how Section 924(c), as written by Congress, could apply in this matter in assessing what sentence is appropriate.

[5] There is no dispute as to the correct offense level for Counts III, VI and VII.   As to Counts III and VII, the government is no longer contesting the application of the five level enhancement. Whether the firearm was specifically pointed at the victim is subject to some doubt in these offenses and, as noted below, the dispute is of no practical significance to the GSR.   There is also no dispute concerning the correct offense level for Count VI as the firearm enhancement does not apply to that Count.   *See* PSR, ¶36.

than a five level adjustment for merely "brandishing" the weapon, is appropriate where the weapon has been used to threaten a specific person.   *See United States v. Villar*, 586 F.3d 76, 90 (1st Cir. 2009) ("the specific leveling of a weapon at another person as opposed to a general display of weaponry [represents] the demarcation between brandishing and otherwise using.")(quotations and citations omitted).   *See also* USSG ¶1B1.1, Application Note 1(C) and (I)(defining "brandished" and "otherwise used").

As to Counts I, II, IV, V and VIII, there can be no serious dispute that Tufts-Raymond went beyond merely displaying a weapon, and pointed it at specific victims.   Though, as a practical matter, the only *material* dispute between the parties regards Count VIII, the attempted armed robbery of the Worcester Credit Union on November 25, 2013.   Because of the grouping rules, it makes no difference to the final GSR if either the five or six point enhancement is applied to the disputed counts other than Count VIII.   *See* PSR, ¶64.

The government contends that the six level enhancement is warranted based upon the following evidence:

Count I -      The October 30, 2013, armed robbery of the Price Chopper Supermarket located at 221 Park Avenue, Worcester;

The facts of this robbery are set out in the PSR (¶10-11).   In the video of the robbery, the defendant draws the handgun from his waistband and points it at directly the clerk.   The foregoing is evidenced in the attached two still images from the Price Chopper surveillance video. (**Exhibit 3**).

Count II -     The October 31, 2013, armed robbery of the Stop & Shop Supermarket located at 940 West Boylston Street, Worcester;

The facts of this robbery are set out in the PSR (¶12).   Within an hour of the robbery, the victim gave a recorded statement to Worcester police in which the victim stated, when asked "what did he do with the gun?," that "He pulled it out and steadied it on the counter aimed at me."   (**Exhibit 4**).

4

Count IV -     The November 9, 2013, armed robbery of the Shaw's Supermarket located
               at 14 West Boylston Street, Worcester;

               The facts of this robbery are set out in the PSR (¶16-17).   In the video of
               the robbery, the defendant draws the handgun from his waistband and
               points it at the clerk.   The foregoing is evidenced in still images from the
               Shaw's surveillance video.   (**Exhibits 5**).   Further, within an hour of the
               robbery, the victim gave a recorded statement to the Worcester Police in
               which she stated in response to the question, "did he point the gun at you?,"
               that "he was holding the gun in my direction.   Every time he yelled hurry,
               he would point it closer to me."   (**Exhibit 6**).

Count V -      The November 20, 2013, armed robbery of the Gold Buyers Jewelry Store
               located at 750 Grafton Street, Worcester;

               The facts of this robbery are set out in the PSR (¶18-19).   The victim told a
               responding officer immediately after the robbery that Tufts-Raymond
               "pointed the gun in his face told [the victim] to give him the money and I
               don't want any ones."   (**Exhibit 7**).   Further, within an hour of the
               robbery, the victim gave a recorded statement in which the victim related
               that as Tufts-Raymond exited, he "walked backwards toward the door,
               facing me with the gun pointed at me…"   (**Exhibit 8**).

Count VIII -   The November 25, 2013, attempted armed robbery of the Worcester Credit
               Union located at 520 West Boylston Street, Worcester.

               The facts of this robbery are set out in the PSR (¶26-27).    Bank
               surveillance captures the defendant pointing the firearm directly at the
               teller.   (**Exhibit 9**).   Further, approximately an hour after the robbery, the
               victim provided a recorded statement to police in which he stated that
               Tufts-Raymond "lifted up his shirt and pointed a gun at me." (**Exhibit 10**)

In the view of the government, the foregoing leaves no doubt that the defendant went

beyond merely displaying the weapon and that the six level enhancement is appropriate.

In opposition, the defendant first argues that because the statement of offense conduct for

Count VIII in the draft PSR stated that Tufts-Raymond "brandished" a firearm and because the

final PSR notes that the surveillance video clearly depicts Tufts-Raymond "brandishing" the

firearm, the Court is seemingly now obliged to conclude that Tufts-Raymond did not point the

weapon at the teller in the bank.   The Court should not be persuaded, and, in the governmnet's

view, such argument merits little response.   The photograph and victim's recorded statement speak for themselves as to what occurred and semantics cannot be elevated over substance.

The defendant's second argument is equally flawed.   In this regard Defendant appears to contend that the defendant's conduct in this case is not as serious as the conduct previously found to have merited the six level enhancement.   While prior cases may have involved more egregious facts, at issue is whether the facts here satisfy the test created by the Court, not whether this case is worse than the level of conduct at issue in prior cases.   The First Circuit has made clear that the line between "brandishing" and "using" is crossed when the weapon is used to threaten a specific person.   That has clearly occurred here.[6]

### Conclusion

For the foregoing reasons, the government suggests that the PSR has correctly calculated the Defendant's GSR.

Respectfully submitted,
CARMEN M. ORTIZ
UNITED STATES ATTORNEY

By:     /s/ Mark J. Grady
Mark J. Grady
Dated: December 9, 2014                 Assistant U.S. Attorney
### Certificate of Service
The document will be served via the Court's ECF system.
/s/ Mark J. Grady
Mark J. Grady, Assistant U.S. Attorney
Dated: December 9, 2014

---

[6] Indeed, the First Circuit appears to have explicitly rejected the construction advanced by the defendant:

[b]y contrast, the Second Circuit in *United States v. Matthews*, 20 F.3d 538 (2d Cir.1994), held that bank robbers who ordered employees and customers to lie on the floor, pointed their weapons at these victims, and threatened to kill anyone who disobeyed ("Get down or I will blow your head off."; "Move and you are dead."; "If you don't keep your head down, you are going to get shot."), *id.* at 554, were merely brandishing their firearms. *We decline to follow this rationale.*

*United States v. LaFortune*, 192 F.3d 157, 161 (1st Cir. 1999) (emphasis added).